IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

**CHARLESTON DIVISION**

THOMAS RAYMOND MENEI,

                       Plaintiff,

v.                                       CIVIL ACTION NO.   2:11-cv-00967

JIM RUBENSTEIN, et al.,

                       Defendants.

**ORDER**

       Pending before the court is defendants Jim Rubenstein, David Ballard, Paul Parry, Jason Collins, Jonathan Frame, and Brian Greenwood's Motion to Dismiss [Docket 18] and defendant Anna Kincaid's Motion to Dismiss [Docket 20].

       These Motions were referred to the Honorable Mary E. Stanley, United States Magistrate Judge, for submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). When a Magistrate Judge issues a recommendation on a dispositive matter, the court reviews *de novo* those portions of the Magistrate Judge's report to which specific objections are filed. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). The court has reviewed *de novo* those portions of the Proposed Findings and Recommendations [Docket 32] to which the plaintiff has filed specific Objections [Docket 33], and **FINDS** that the plaintiff's objections lack merit. The defendants have not filed any objections. For the reasons discussed below, the defendants' Motions to Dismiss are **GRANTED** in part and **DENIED** in part.

## I.      Background

The facts of this case are adequately set forth in the Magistrate Judge's Proposed Findings and Recommendations, which I **ADOPT** and incorporate herein.

## II.      Standard

A district court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). This court is not, however, required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). In addition, this court need not conduct a *de novo* review when a party "makes general and conclusory objections that do not direct the Court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982). When reviewing portions of the report *de novo*, this court will consider the fact that the plaintiff is acting *pro se*, and his pleadings will be accorded liberal construction. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978).

## III.      Discussion

The plaintiff is presently an inmate at Mt. Olive Correctional Complex and his allegations arise from his time there. The plaintiff's complaint alleges violations of his Eighth Amendment right to be free from cruel and unusual punishment and his Fourteenth Amendment right to due process. The plaintiff has brought these claims concerning three related but somewhat distinct incidents. First, the plaintiff contends he provided information about the Aryan Brotherhood and, fearing retribution from the Brotherhood for informing on them, requested protection in the form

2

of segregation from the general population or transfer to another facility. (Compl. [Docket 2], at 6, 9, 10-15). The plaintiff contends defendants Jim Rubenstein, David Ballard, Paul Parry, Jason A. Collins, and Jonathan Frame showed deliberate indifference to the plaintiff's health and safety, in violation of the Eighth Amendment, by failing to protect the plaintiff from the Aryan Brotherhood. (*Id*. at 10-15). Due to the failure to transfer, the plaintiff lived in fear for his safety and was attacked by an unknown inmate on February 23, 2011. (*Id*. at 12-13, 17). The second incident relates to the first, because after the plaintiff was attacked, he was charged, tried, and found guilty of escape in a proceeding that the plaintiff contends violated his due process rights under the Fourteenth Amendment. (*Id*. at 18-21). Finally, the third incident regards the plaintiff's medical care from injuries related to the attack on February 23, 2011. The plaintiff alleges that defendants Dr. Humayan Rashid and Medical Director Anna Kincaid showed deliberate indifference to the plaintiff's health, in violation of the Eighth Amendment, by ignoring or improperly treating his medical issues. These include seeing double, blurry vision, persistent dizziness, seizures, and a broken arm from a seizure that has since healed improperly such that he is in constant pain. (*Id*. at 18, 21).

I now consider each of the plaintiff's claims in the order the Proposed Findings and Recommendations addressed them.

### A. Claims for Monetary Damages against DOC Defendants in Their Official Capacity

The plaintiff has sued defendants Paul Parry, Jason Collins, David Ballard, Jim Rubenstein, Jonathan Frame, and Brian Greenwood (hereinafter "DOC defendants")[1] in both their

---

[1]     Paul Parry is the Assistant Warden of Security at Mt. Olive Correctional Complex ("Mt. Olive"), Jason Collins is Assistant Warden of Programs at Mt. Olive, David Ballard is the Warden at Mt. Olive, Jim Rubenstein is the Commissioner of the Department of Corrections, Jonathan Frame is Institutional-Investigator at Mt. Olive, and Brian

official and personal capacities. (Compl. [Docket 2], at 6-8). In addition to declaratory and injunctive relief, (*id*. at 9, 29-30), the plaintiff has requested $5,000 in compensatory damages and $50,000 in punitive damages from each defendant. (*Id*. at 30-31). Judge Stanley concluded from these requests that the plaintiff alleged claims for retroactive monetary damages against state officials in their official capacity, and dismissed those claims as barred by the Eleventh Amendment. (Proposed Findings and Recommendations, [Docket 32], at 7-8).

The plaintiff has not offered specific objections to the Proposed Findings and Recommendations relating to immunity under the Eleventh amendment. Accordingly, I **ADOPT** and incorporate herein the Magistrate Judge's Proposed Findings and Recommendations with respect to the claims for retroactive damages against the DOC defendants in their official capacities. The plaintiff's claims against the DOC defendants in their official capacities for damages are hereby **DISMISSED**.

###   B.   Eighth Amendment Claim against Parry, Collins, Ballard, and Rubenstein for Failing to Protect Menei

The plaintiff has also sued defendants Parry, Collins, Ballard, and Rubenstein in their personal capacities, seeking damages, declaratory relief, and injunctive relief. (Compl. [Docket 2], at 6-8, 9, 29-31). These defendants contend that they are entitled to qualified immunity for claims against them as individuals. (Def.'s Mem. Supp. Mot. Dismiss Compl. [Docket 19], at 6-10). Judge Stanley ruled that the plaintiff had alleged sufficient facts to deny qualified immunity for defendants Parry, Collins, Ballard, and Rubenstein and thus dismissed that part of the DOC defendants' Motion to Dismiss. (Proposed Findings and Recommendations, [Docket 32], at 11-14).

---

Greenwood is Institutional Magistrate Hearing Officer at Mt. Olive. (Compl. [Docket 2], at 6-7).

Neither party has offered specific objections to the Proposed Findings and Recommendations relating to the denial of DOC defendants' Motion to Dismiss based on qualified immunity for defendants Parry, Collins, Ballard, and Rubenstein. Accordingly, I **ADOPT** and incorporate herein the Magistrate Judge's Proposed Findings and Recommendations with respect to these defendants. The plaintiff's claim that defendants Parry, Collins, Ballard, and Rubenstein violated the plaintiff's Eighth Amendment rights shall proceed.

### C. Eighth Amendment Claim against Jonathan Frame for Failing to Protect Menei

The plaintiff has also sued Institutional-Investigator Jonathan Frame under the Eighth Amendment. The defendant alleges that he is entitled to qualified immunity. Judge Stanley dismissed the plaintiff's claim against Frame, finding that he failed to plead sufficient facts to state a claim under the Eighth Amendment. (Proposed Findings and Recommendations, [Docket 32], at 12).

"Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Price v. Sasser*, 65 F.3d 342, 345 (4th Cir. 1995) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Whether qualified immunity applies depends on "whether a constitutional violation occurred and . . . whether the right violated was clearly established." *Merchant v. Bauer*, 677 F.3d 656, 661 (4th Cir. 2012). The court may address these two elements in any order. *Id*. Following this test and the pleading standard set forth in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009), this court will first assess whether the plaintiff has

alleged sufficient facts to state a claim that defendant Jonathan Frame violated the Eighth Amendment.

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." *Price*, 65 F.3d at 345 (quoting *Farmer v. Brennan*, 511 U.S. 825, 833 (1994)). To make a prima facie case, an inmate must show two things. First, the plaintiff must show that the deprivation alleged is objectively "sufficiently serious," meaning that the "*prison official's act or omission must result in the denial* of the minimal civilized measure of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotes omitted and emphasis added). Second, the plaintiff must show that the prison official has a "deliberate indifference" state of mind, which means that the official "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

The plaintiff's complaint has failed to satisfy the first element because it does not point to any act or omission by Frame related to the plaintiff's lack of protection from the Aryan Brotherhood. The complaint alleges that on January 20, 2011, Frame asked if the plaintiff wanted "special management," the plaintiff told his unit manager Mr. Kenny that he did want special management, and Mr. Kenny spoke with Frame and Parry. (Compl. [Docket 2], at 12-13). The plaintiff does not allege what Frame did or did not do based on the plaintiff's answer or conversation with Mr. Kenny, or that any of these actions or omissions resulted in him being denied transfer to Northern Regional Jail. On January 22, 2011, Associate Warden Collins allegedly denied the plaintiff protective custody, but the plaintiff does not allege that Frame was in any way involved in that decision. (*Id*. at 13). After this, the plaintiff "filled out a special management form." (*Id*.). The plaintiff alleges that Frame attended the special management

6

committee meeting on February 18, 2011, but the committee recommended that the plaintiff be transferred to Northern Regional Jail, so any actions Frame did or did not take in this meeting could not have caused the plaintiff to be denied transfer. (*Id*. at 15). It was Warden Ballard who overruled the special committee, and then Commissioner Rubenstein who denied the plaintiff's appeal of Ballard's decision. (*Id*. at 23).

The plaintiff has not alleged any action or omission by Frame that caused the plaintiff to be denied a transfer to the Northern Regional Jail. Therefore, the plaintiff has failed to plead sufficient facts to show the first element of the prima facie case for an Eighth Amendment violation based on failure to protect from other prisoners. Accordingly, I **ADOPT** and incorporate herein the Magistrate Judge's Proposed Findings and Recommendations with respect to the Eighth Amendment claim against Jonathan Frame, which is hereby **DISMISSED**.

### D.  Due Process Claim against Greenwood and Frame

The plaintiff claims that defendants Brian Greenwood and Jonathan Frame violated his Due Process rights during the disciplinary proceeding where he was charged with escape and that resulted in him being placed in administrative segregation. (Compl. [Docket 2], at 19-20). Judge Stanley concluded that the only negative consequence of being found guilty of escape was being placed in administrative segregation, and that the plaintiff had not shown that administrative segregation posed an "atypical and significant hardship in relation to ordinary prison life." (Proposed Findings and Recommendations, [Docket 32], at 18-19). Therefore, the plaintiff had not shown he had an interest protected by the due process clause of the Fourteenth Amendment, and his complaint failed to state a claim. (*Id*. at 19). The plaintiff has objected to this finding.

A plaintiff must show a deprivation of "life, liberty, or property" in order to pursue a due process claim under the Fourteenth Amendment. *Beverati v. Smith*, 120 F.3d 500, 502 (4th Cir. 1997). In order for prisoners to show that they are deprived of their liberty interest by being placed in administrative segregation, they must demonstrate that administrative segregation "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 502 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). While this inquiry is fact specific because it concerns the conditions of the prison, "the ultimate determination of whether the conditions impose such an atypical and significant hardship that a liberty interest exists is a legal determination, subject to de novo review." *Id*. at 503.

In *Beverati*, the Fourth Circuit did not find a liberty interest when the prisoners were: 1) confined in administrative segregation for six months; 2) placed in "unbearably hot" cells that were 3) infested with vermin; 4) smeared with human feces and urine; and 5) flooded with water, 6) were only allowed to leave their cells three or four times a week, 7) were not allowed outside recreation, 8) were denied educational or religious services, and 9) were given "considerably smaller portions" of food." 120 F.3d at 504. In *Wilkinson v. Austin*, however, the U.S. Supreme Court did find a liberty interest when the prisoners were 1) confined indefinitely, 2) with only annual review of their placement, 3) they were made ineligible for parole because of their placement there, 4) they were denied "almost all human contact . . . even to the point that conversation is not permitted from cell to cell," 5) they could exercise for one hour a day in a "small indoor room," and 6) the lights were on for twenty-four hours a day. 545 U.S. 209, 223-24 (2005). The Court emphasized that "any of these conditions standing alone might not be sufficient to create a liberty interest." *Id*. at 224.

8

In the plaintiff's Objection to the Proposed Findings and Recommendations, he explains:

> Liberty Intrest For Me is I went From Being a Informant and scared For my life, To Being Beaten, To Charged and Found Guilty of Escape, with no one Single Big of Evidence of Escape. To Be Placed In The Segrigation Unit locked down 23 Hours A Day, For the Past 17 Months, Constantly Call a Rat, Verbally assaulted on a daily Bases, No opportunity To Have Contact Visit's with my Familaly, loss of all privileges, This is Not Normal prison Life, Completely Different From what I was doing.

[Docket 33 at 3-4]. The plaintiff has certainly alleged additional hardships from being in administrative segregation, but they are not so "atypical and significant" to be a liberty interest. Although the plaintiff alleges he has been in administrative segregation for nearly three times as long as the prisoners in *Beverati*, it was not indefinite like in *Wilkinson*. The plaintiff has suffered no other ill consequences from being in administrative segregation, such as losing eligibility for parole. Although he is "locked down" twenty-three hours a day, cannot receive visitors and has lost "all privileges," those are the usual aspects of a solitary confinement facility. In *Wilkinson* it was the fact that there were additional factors (indefinite detention and loss of parole eligibility) that the Court found persuasive. *See* 545 U.S. at 224. The plaintiff has not alleged any additional factors, let alone anything near what was alleged and found insufficient in *Beverati*.

Accordingly, the court **ADOPTS** the findings and recommendations of the Magistrate Judge with respect to the plaintiff's Fourteenth Amendment claim. (Proposed Findings and Recommendations, [Docket 32], at 14–19). The plaintiff's claim that the defendants violated his due process rights is hereby **DISMISSED**.

### E.  Eighth Amendment Claim against Kincaid and Rashid

The plaintiff has also alleged that defendants Dr. Humayan Rashid and Anna Kincaid violated the Eighth Amendment through their deliberate indifference to his post-assault injuries.

9

As a preliminary matter, neither party has offered specific objections to the Proposed Findings and Recommendations relating to whether defendant Kincaid is a "person" under section 1983. Accordingly, I **ADOPT** and incorporate herein the Magistrate Judge's Proposed Findings and Recommendations with respect to defendant Kincaid's ability to be sued under section 1983.

Judge Stanley determined that the plaintiff failed to state a claim upon which relief can be granted against defendant Kincaid because the plaintiff only alleged that Kincaid denied his grievances about defendant Rashid's treatment. (Proposed Findings and Recommendations, [Docket 32], at 24). The plaintiff did not allege "any particular treatment by defendant Kincaid, or any particular role that she has played in decisions concerning his medical treatment, other than the denial of his grievances." (*Id*.). The plaintiff objects to this finding.

To prove an Eighth Amendment violation stemming from inadequate medical care, a prisoner must show the defendant "acted with 'deliberate indifference' (subjective) to the inmate's 'serious medical needs' (objective)." *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Mere disagreements about the best course of medical treatment are typically not legally actionable. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985). Further, a plaintiff cannot use *respondeat superior* to hold a supervisory defendant to be held liable under 1983, but instead must show either: "1) the supervisory defendant[] failed to provide an inmate with needed medical care; (2) that the supervisory defendant[] deliberately interfered with the prison doctors' performance; or (3) that the supervisory defendant[] tacitly authorized or were indifferent to the prison physicians' constitutional violations." *Webb v. Driver*, No. 3:07-cv-62, 2011 WL 2680499, at *7 (N.D. W. Va. July 8, 2011) (citing *Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990)). This standard requires more than just evidence that the subordinate doctor was

deliberately indifferent to the inmate's needs.[2] *Id.*; *see also Greene v. Phipps*, No. 7:09-cv-00100, 2009 WL 3055232, at *10 (W.D. Va. Sept. 24, 2009). "In reviewing claims of medical care, supervisors are entitled to rely on the judgment of the medical staff as to the course of treatment prescribed." *Webb*, 2011 WL 2680499, at *7. Therefore, to hold a defendant who supervises medical treatment liable, the plaintiff must either show that the defendant's own acts met the *Estelle* test or that their supervision violated the *Miltier* test.

Here, the plaintiff does not allege any action or inaction by Kincaid resulting in his serious physical harm other than her decision to not overrule Doctor Rashid's medical judgment. (Compl. [Docket 2], at 21, 26-27; *see also* Objections to Proposed Findings and Recommendation [Docket 33], at 5-7). Therefore, the plaintiff is seeking to hold Kincaid liable as a supervisor under *Miltier*, not under *Estelle*. The plaintiff admits to receiving some medical care from Doctor Rashid for his initial injuries from being attacked on February 23, 2011, which included x-rays of his head (Compl. [Docket 2], at 18). The plaintiff argues, however, that he did not receive any treatment for his seizures or for his broken arm. (*Id*. at 21, 26). While this may possibly state a claim against Rashid, it does not automatically apply to Kincaid. *See Miltier v. Beorn*, 896 F.2d 848, 854 (4th Cir. 1990).

The plaintiff attempts to show Kincaid's liability by attaching his grievance forms to the complaint; they show that the plaintiff told Kincaid that he did not feel he was being treated properly. (*See* Compl. [Docket 2], Exhibit 7 at 5, 7, 9, 11). In response Kincaid noted the medical treatment that the plaintiff had received and supported the medical decision of Rashid. (*Id*.). This shows Kincaid did not believe that the plaintiff's serious medical needs were being ignored; after reviewing his complaint, Kincaid chose to rely on Rashid's medical judgment. (*Id.; see also*

---

[2]     This court expresses no opinion at this time as to whether the claim against Rashid should proceed.

Compl. [Docket 2], Exhibit 7 at 11) (document purportedly from Kincaid listing incidents of plaintiff's reported medical problems and her evaluation that plaintiff's evaluations showed he was not hurt or that appropriate treatment was being given for his symptoms). Kincaid was entitled to rely on Dr. Rashid's opinion, formed from his own observations of the plaintiff, because Kincaid was operating as a supervisor and did not personally examine the plaintiff. *See Webb*, 2011 WL 2680499, at *7 ("Liability in [1983] cases can typically be avoided by simply deferring to the doctors' medical judgment." (citing *Miltier*, 896 F.2d at 854)). The plaintiff was able to see Rashid and receive a medical opinion on his symptoms; though the plaintiff did not agree with Rashid's medical opinion, it is not Kincaid's role to micro-manage Rashid. Therefore the plaintiff cannot support an Eighth Amendment claim against Kincaid because he has pled insufficient facts to demonstrate that she should not have relied on Rashid's medical judgment.

Accordingly, I **ADOPT** and incorporate herein the Magistrate Judge's Proposed Findings and Recommendations with respect to defendant Kincaid's Motion to Dismiss [Docket 20]. The plaintiff's claim against defendant Kincaid is hereby **DISMISSED**.

## IV.    Conclusion

For the reasons discussed above, I **ADOPT** the Magistrate Judge's Proposed Findings and Recommendations. The defendants' motions are **GRANTED** with respect to 1) the claims against defendants Jim Rubenstein, David Ballard, Paul Parry, Jason A. Collins, Jonathan Frame, and Brian Greenwood in their official capacity for monetary damages, 2) the Eighth Amendment claim against defendant Jonathan Frame, and 3) the Fourteenth Amendment claim against all defendants; and **DENIED** with respect to all other claims.

The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:    October 11, 2012

Joseph R. Goodwin, Chief Judge