## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

THOMAS RAYMOND MENEI,

                Plaintiff,

v.                              CIVIL ACTION NO.   2:11-cv-00967

JIM RUBENSTEIN, et al.,

                Defendants.

### MEMORANDUM OPINION AND ORDER

Now before the court is the Motion for Summary Judgment on Behalf of Defendant Jim Rubenstein, Defendant David Ballard, Defendant Paul Parry, and Defendant Jason Collins in their individual capacities [Docket 75]. For the reasons set forth below, the motion is **GRANTED** with regard to Defendants Parry, Collins, and Rubenstein and **DENIED** with regard to Defendant Ballard.

### I.    Background

#### A.  Procedural History

The plaintiff, Thomas Raymond Menei, is in the custody of the West Virginia Division of Corrections and filed this action regarding events that took place while he was incarcerated at Mount Olive Correctional Complex ("Mount Olive"). In the Complaint, the plaintiff alleged that the defendant prison officials violated his due process rights under the Fourteenth Amendment and his right to be free from cruel and unusual punishment under the Eighth Amendment. The plaintiff also alleged that the defendants' decisions to deny him protective custody disregarded a significant

risk of harm to his safety and resulted in an assault. The plaintiff further alleged that he was denied appropriate medical treatment for the injuries sustained during the assault and that he was charged with and found guilty of escape without due process of law. The plaintiff requested damages as well as declaratory and injunctive relief.

The defendants named in the complaint included: Jim Rubenstein, Commissioner of the West Virginia Division of Corrections, in his official and individual capacities; David Ballard, Warden of Mount Olive, in his official and individual capacities; Paul Parry, Assistant Warden of Security at Mount Olive, in his official and individual capacities; Jason Collins, Assistant Warden of Programs at Mount Olive, in his official and individual capacities; John Frame, Institutional Investigator at Mount Olive, in his official and individual capacities; Brian Greenwood, Institutional Magistrate Hearing Officer at Mount Olive, in his official and individual capacities; Humayan Rashid, a doctor at Mount Olive employed by Wexford Health Sources, Inc. ("Wexford"); and Anna Kinkaid, Health Service Administrator at Mount Olive, employed by Wexford.

Several motions to dismiss were filed. Because the plaintiff was proceeding pro se at that time, the motions were referred to Magistrate Judge Stanley. On June 20, 2012, Judge Stanley recommended I dismiss: (1) the claims against Defendants Rubenstein, Ballard, Parry, Collins, Frame, and Greenwood in their official capacities; (2) all of the allegations against Defendant Frame; (4) the due process allegations; and (5) the allegations against Defendant Kincaid. (*See* Proposed Findings & Recommendation ("PF&R I") [Docket 32]). I adopted PF&R I on October 11, 2012. (*See* Order [Docket 45]).

On March 25, 2013, Judge Stanley recommended I grant Defendant Rashid's Motion to Dismiss and dismiss Defendant Rashid from this action. (*See* PF&R II [Docket 54]). That same day, Judge Stanley also recommended I dismiss the plaintiff's claims for declaratory and injunctive relief because they became moot after the plaintiff was transferred to another prison. (*See* PF&R III [Docket 55]). I adopted PF&R II and PF&R III. (*See* Order [Docket 66]; Order [Docket 67]). Thereafter, the plaintiff obtained counsel.

Presently before the court is the Motion for Summary Judgment filed by Defendants Rubenstein, Ballard, Parry, and Collins in their individual capacities. The defendants argue that there is no genuine issue of material fact regarding the plaintiff's Eighth Amendment claims and also that each defendant is entitled to qualified immunity. The defendants additionally argue that the plaintiff's request for injunctive relief is moot and should be dismissed. This issue was already addressed in PF&R III and my order adopting it (*see* Order [Docket 66]), and therefore the section of the Defendants' Motion for Summary Judgment relating to injunctive relief is **DENIED as moot**. The remaining claims in this case are that Defendants Ballard, Rubenstein, Parry, and Collins violated the plaintiff's Eighth Amendment right to be free from cruel and unusual punishment.

### B.  Factual History

This case stems from threats the plaintiff allegedly received from members of the Aryan Brotherhood gang while incarcerated at Mount Olive and a subsequent physical assault on the plaintiff. Between November and December 2010, the plaintiff spoke with Defendant Parry and two other Mount Olive staff members regarding threats he was receiving from the Aryan Brotherhood and Inmate Cockerham, who was referred to as "Joker." Joker had allegedly told the

plaintiff to stab another inmate and warned the plaintiff that if he did not stab the other inmate before Thanksgiving, that he would be stabbed instead. At the same time, Joker purportedly showed the plaintiff autopsy pictures of an inmate at Mount Olive he had previously killed.

The plaintiff informed a Mount Olive sergeant about this alleged conversation and was escorted to a meeting with Defendant Parry and other Mount Olive officials. (*See* Menei Dep. [Docket 76-1], at 26). At the meeting, the plaintiff gave a taped statement regarding the Aryan Brotherhood's illegal activities at Mount Olive. (*See id.*). He also provided information regarding the Aryan Brotherhood's inner workings and a list of its members. (*See id.*). The plaintiff also told Defendant Parry about Joker's demand and threats, and expressed that he feared for his life and safety. (*See id.*). After this meeting, Joker was removed from the general prison population and placed in lockdown. (*See id.* at 34).

Following this meeting, the plaintiff states that he purposefully started a fight in violation of a prison rule so he would be placed in segregation. (*See* Menei Dep. [Docket 75-1], at 25:6-11). He testifies that did this because he feared for his safety. (*See id.*). On January 15, 2011, while still in segregation, the plaintiff wrote a letter to Defendant Parry asking for protection from the Aryan Brotherhood and requesting that that he not be returned to the general prison population because he was not safe there. (*See* Jan. 15, 2011 Letter [Docket 81-1]).

Five days later, on January 20, 2011, the plaintiff was released from segregation. On January 20 and January 22, 2011, he had conversations with Defendant Collins regarding his request to be placed in protective custody. (*See* Menei Dep. [Docket 75-1], at 17-24). He told Defendant Collins the specifics of the threats he said he had received that he believed were a result of the information he had given to Defendant Parry regarding the Aryan Brotherhood. According

to the plaintiff, Defendant Collins told the plaintiff would not be placed in protective custody because he was serving a life sentence, and he would "just . . . have to deal with it." (Menei Dep. [Docket 75-1], at 30:17-24).

The plaintiff filed a grievance and special management request form asking to be transferred out of Mount Olive on February 13, 2011. While he was waiting for the Special Management Committee to review his request, another inmate, Glen Meadows, was attacked and physically assaulted by a member of the Aryan Brotherhood. (*See id.* at 33). After Meadows was assaulted, the plaintiff was allegedly told by another inmate that he was also "on that list." (Compl. [Docket 2], at 14; Menei Dep. [Docket 75-1], at 32:18-23).

On February 18, 2011, the plaintiff met with the Special Management Committee and told them he believed his life was in danger. He provided the committee with the details of the alleged threats made against him and additional information regarding the activities of the Aryan Brotherhood. The committee found that there was "sufficient verifiable information" indicating that the plaintiff's "safety may be threatened." (Special Management Review Form [Docket 2-5], at 2).[1] The committee also found there was "sufficient verifiable information" indicating that the plaintiff's "safety ha[d] been threatened" and he "need[ed] to be transferred to another facility." (*Id.*). The committee therefore recommended the plaintiff be transferred to Northern Regional Jail and Correctional Facility ("Northern Regional Jail"). (*See id.*).

Defendant Ballard, who had the ultimate decision-making authority regarding the transfer, denied the committee's recommendation. Defendant Ballard argues that he denied the transfer because of confidential information presented to him that the plaintiff was planning to escape.

---

[1] Each exhibit to the Complaint contained several different documents. The page numbers listed for the exhibits to the Complaint reflect the ECF pagination and do not reflect the page numbers on each separate document.

Defendant Ballard denied the transfer on the same day the committee issued the recommendation, without being present at the hearing or meeting with the plaintiff. (*See id.*; Menei Dep. [Docket 75-1], at 19-20; Mem. in Supp. of Mot. for Summ. J. on Behalf of Def. Jim Rubenstein, Def. David Ballard, Def. Paul Parry, and Def. Jason Collins ("Defs.' Mem.") [Docket 76], at 5). Defendant Ballard overruled all of the committee's findings and determined the plaintiff should remain in his "present status" (in the general prison population at Mount Olive). (Special Management Review Form [Docket 2-5], at 2).

As a result of the information the plaintiff gave the committee, actions were allegedly taken against the Aryan Brotherhood at Mount Olive. (*See* Compl. [Docket 2], at 16-17). On February 22, 2011, another inmate purportedly told the plaintiff that he should be careful because everyone knew he had provided information about the Aryan Brotherhood. The plaintiff told Mount Olive officials about what he alleged were continued threats.

On February 23, 2011, while walking near his housing unit with headphones on, the plaintiff was attacked. He was struck in the back of the head and knocked out. The plaintiff did not see the identity of his attacker. When the plaintiff woke up, he was disoriented, could not see, and his whole body hurt. Since the assault, the plaintiff has suffered from seizures and a loss of vision in one eye.

On March 8, 2011, the plaintiff was found guilty of an escape charge and was placed in sixty days of punitive segregation. While serving his punitive segregation, the Administrative Segregation Committee determined that the plaintiff should remain in administrative segregation

following his release from punitive segregation because of his alleged escape plan. (*See* Menei Dep. [Docket 75-1], at 66).[2]

On March 11, 2011, while in administrative segregation, the plaintiff appealed Defendant Ballard's reversal of the Special Management Committee's decision to Defendant Rubenstein. (*See* Appeal [Docket 2-5], at 3-12). Defendant Rubenstein upheld Defendant Ballard's decision. (*See* Grievance 11-Moc-Q2-429 Review [Docket 2-6], at 7). Defendant Rubenstein concluded that the plaintiff's appeals regarding special management and transfer were moot since the plaintiff was being housed in administrative segregation and not the general prison population at the time of the appeal. (*See id.*). The plaintiff remained in administrative segregation for at least two years. (*See* Menei Dep. [Docket 75-1], at 66).

In 2013, the plaintiff was released from administrative segregation and placed back in the general prison population at Mount Olive. After he was returned to the general population, someone slid a threatening note under the plaintiff's door after finding his court filings. Subsequently, the plaintiff was transferred to Northern Regional Jail. The plaintiff states that Defendant Ballard approved his transfer because of the threatening note. The plaintiff is currently being housed at Northern Regional Jail.

## II.    Standard of Review

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242,

---

[2] The parties do not present evidence regarding the details of the plaintiff's alleged escape attempt or what it entailed. The relevance of the alleged attempt on the plaintiffs' claims will be determined at trial.

249 (1986). Instead, the court will draw any permissible inference from the underlying facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]" *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, *Price Waterhouse v. Hopkins*, 490 U.S. 228 (1989).

## III.  Discussion

### A.  Eighth Amendment: Deliberate Indifference

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones, and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotations omitted). The requirements of

the Eighth Amendment were incorporated to the states through the Fourteenth Amendment. These

amendments place some requirements on prison officials to keep prisoners safe from harm.

> In particular, . . . prison officials have a duty to protect prisoners from violence at the hands of other prisoners. Having incarcerated persons with demonstrated proclivities for antisocial criminal, and often violent, conduct, having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course. Prison conditions may be restrictive and even harsh, but gratuitously allowing the beating or rape of one prisoner by another serves no legitimate penological objective, any more than it squares with evolving standards of decency. Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society.

> It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety. Our cases have held that a prison official violates the Eighth Amendment only when two requirements are met. First, the deprivation alleged must be, objectively, sufficiently serious; a prison official's act or omission must result in the denial of the minimal civilized measure of life's necessities. For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm.

> The second requirement follows from the principle that only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. To violate the Cruel and Unusual Punishments Clause, a prison official must have a sufficiently culpable state of mind. In prison-conditions cases that state of mind is one of deliberate indifference to inmate health or safety.

*Id.* at 833-34 (internal quotations and references omitted). An official is deliberately indifferent if

he "knows of and disregards an excessive risk to inmate health or safety; the official must both be

aware of facts from which the inference could be drawn that a substantial risk of serious harm

exists, and he must also draw the inference." *Id.* at 837.

The defendants argue that the plaintiff cannot demonstrate an Eighth Amendment violation

because he does not know precisely who struck him in the head. This argument is without merit.

The Supreme Court has stated that

9

> a prison official [may not] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the specific prisoner who eventually committed the assault. The question under the Eighth Amendment is whether prison officials, acting with deliberate indifference, exposed a prisoner to a sufficiently substantial risk of serious damage to his future health, and it does not matter whether the risk comes from a single source or multiple sources, any more than it matters whether a prisoner faces an excessive risk of attack for reasons personal to him or because all prisoners in his situation face such a risk.

*Id.* at 843 (internal quotations omitted); *see also, e.g.*, *Hayes v. New York City Dep't of Corr.*, 84 F.3d 614, 621 (2d Cir. 1996) (finding summary judgment inappropriate where the defendants argued that the plaintiff did not identify his "enemies" to prison officials and stating "the issue is not whether [the plaintiff] identified his enemies by name to prison officials, but whether they were aware of a substantial risk of harm to [the plaintiff]. Although a prisoner's identification of his enemies is certainly relevant to the question of knowledge, it is not, necessarily, outcome determinative.").

Taken in the light most favorable to the plaintiff, a reasonable jury could conclude that Defendant Ballard violated the plaintiff's Eighth Amendment rights by his deliberate indifference to the plaintiff's safety. The plaintiff has demonstrated that he suffered an "objectively, sufficiently serious" harm when he was assaulted. *Farmer*, 511 U.S. at 834; *see also id.* at 852 (Blackmun, J., concurring) ("[V]iolence among prison inmates serves absolutely no penological purpose. Such brutality is the equivalent of torture, and is offensive to any modern standard of human dignity.") (internal quotation marks and citations omitted). Knowledge can be inferred. *See Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("Although the deliberate indifference standard requires a showing of actual knowledge as to both elements, it 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.' Thus, 'a

10

factfinder may conclude that an officer knew of a substantial risk from the very fact that the risk was obvious.'") (quoting *Farmer*, 511 U.S. at 842). However, in the case of Defendant Ballard, the plaintiff has presented evidence sufficient to demonstrate *actual* knowledge of the serious threat he faced.

Defendant Ballard overruled the finding of the Special Management Committee that there was "sufficient verifiable information" that the plaintiff's safety was threatened. (*See* Special Management Review Form [Docket 2-5], at 2). There is no dispute that, as the Warden and person in charge of making the ultimate determination regarding the plaintiff's transfer, Defendant Ballard was aware of the "sufficient and verifiable" dangers posed to the plaintiff. Defendant Ballard had the authority to uphold or deny the Special Management Committee's decision. He also had the authority to determine what action, if any, to take regarding the "sufficient verifiable information" indicating that the plaintiff's "safety [had] been threatened and [he] need[ed] to be transferred to another facility." (*Id.*). Rather than determine that any type of action should be taken, Defendant Ballard found that the plaintiff should "remain in [his] present status[,]" despite the committee's findings (*Id.*). Five days after Defendant Ballard returned the plaintiff to the general prison population, he was assaulted.

Defendant Ballard contends that in light of the facts presented, his actions were reasonable. Reasonableness is a defense to an Eighth Amendment action. *See Farmer*, 511 U.S. at 844, 845 (stating that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted" and "[w]hether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual

11

Punishments Clause"). However, the plaintiff has presented sufficient evidence that a jury could find Defendant Ballard acted unreasonably. Whether Defendant Ballard acted reasonably is a factual issue for the jury, not the court, to determine. *See id.* at 842-43 (stating that "if an Eighth Amendment plaintiff presents evidence showing that a substantial risk of inmate attacks was longstanding, pervasive, well-documented, or expressly noted by prison officials in the past, and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it, then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk") (internal quotations omitted); *see also*, *e.g.*, *Conkel v. Van Pelt*, 854 F.2d 1316 (4th Cir. 1988) ("The determination of reasonableness under the circumstances of a particular case is a classic question of fact within the province of the jury.") (unpublished table decision).

The plaintiff argues that Defendants Parry and Collins knew he was in danger but failed to take any action to protect him. The plaintiff has testified that he told Defendant Parry his life was threatened by Joker, and that he repeatedly followed up with Defendant Parry regarding the danger he was in, but Defendant Parry told the plaintiff he could not help him. (*See* Menei Dep. [Docket 75-1], at 24-28. 35-36; Jan. 15, 2011 Letter to Def. Parry [Docket 81-1]). The plaintiff also testified that he told Defendant Collins about the threats against him and requested to be placed in special management. In response, the plaintiff states that Defendant Collins told him "you're just going to have to deal with it." (*See* Menei Dep. [Docket 75-1], at 30-31). The plaintiff argues that he was assaulted as a result of Defendant Parry's and Defendant Collins's failure to take action.

Taken in the light most favorable to the plaintiff, these facts demonstrate, at most, negligence on the parts of Defendants Parry and Collins. "Deliberate indifference is a very high

standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999).

> [T]wo slightly different aspects of an official's state of mind . . . must be shown in order to satisfy the subjective component in this context. First, actual knowledge of the risk of harm to the inmate is required. Beyond such knowledge, however, the officer must also have recognized that his actions were insufficient to mitigate the risk of harm to the inmate.

*Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008) (internal citations and quotations omitted). Actual knowledge may be inferred by the circumstances, however, the circumstances must be evidence that there was an obvious risk to which the official must have been aware. *See Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004) ("Although the deliberate indifference standard requires a showing of actual knowledge as to both elements, it 'is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence.' Thus, 'a factfinder may conclude that an officer knew of a substantial risk from the very fact that the risk was obvious.'") (quoting *Farmer*, 511 U.S. at 842). The plaintiff has not presented any such evidence with regard to Defendants Parry and Collins. Unlike Defendant Ballard, who reviewed the committee's order stating that there was sufficient verifiable information that the plaintiff was in danger and needed to be transferred, the only evidence against Defendants Parry and Collins is that the plaintiff told them he felt unsafe. This is not sufficient to demonstrate that Defendants Parry and Collins had actual knowledge of the risk of the harm to the plaintiff, or that they recognized their actions were insufficient. I therefore **FIND** that summary judgment is appropriate for Defendants Parry and Collins and summary judgment is **GRANTED** in favor of Defendants Parry and Collins.

13

With regard to Defendant Rubenstein, the only action that the plaintiff alleges Defendant Rubenstein took was the denial of his appeal from Defendant Ballard's overruling of the Special Management Committee. (*See* Pl.'s Am. Resp. in Opp. to Defs.' Mot. for Summ. J. ("Pl.'s Resp.") [Docket 82], at 5, 16-17). However, Defendant Rubenstein's decision occurred on April 21, 2011—well after the plaintiff was assaulted. (*See* Grievance 11-Moc-Q2-429 Review [Docket 2-6], at 7). The plaintiff does not allege that any harm came to him after, much less because of, Defendant Rubenstein's decision. (*See* Pl.'s Resp. [Docket 82], at 16-17). The plaintiff also does not present any evidence that Defendant Rubenstein was aware of the threats before the attack. I therefore **FIND** that the plaintiff has not presented a genuine issue of material fact regarding whether Defendant Rubenstein was deliberately indifferent to the plaintiff's Eighth Amendment rights and summary judgment is **GRANTED** in favor of Defendant Rubenstein.

## B.  Qualified Immunity

Having determined that the plaintiff presented a genuine issue of fact regarding his Eighth Amendment claim Defendant Ballard, I must now decide whether Defendant Ballard is nonetheless entitled to qualified immunity. "Government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Winfield v. Bass*, 106 F.3d 525, 530 (4th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The Fourth Circuit has established a two-part test for determining whether an officer is entitled to qualified immunity.

> The threshold question in the qualified immunity analysis on summary judgment is whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the officer's conduct violated a constitutional right. If no constitutional right would have been violated were the allegations established, there

14

is no necessity for further inquiries concerning qualified immunity. If, however, the
facts alleged show a constitutional violation, then the next step is to ask whether
the constitutional right was clearly established in the specific context of the case.

*Odom v. S. Carolina Dep't of Corr.*, 349 F.3d 765, 769-70 (4th Cir. 2003) (internal quotations

omitted); *see also*, *e.g.*, *Henry v. Purnell*, 652 F.3d 524, 531 (4th Cir. 2011). Therefore, I must

determine first whether each individual defendant's conduct could be found to have violated a

constitutional right, and second whether that right was clearly established at the time of the

violation.

The plaintiff alleges that Defendant Ballard, the Warden of Mount Olive, violated his

constitutional rights by overruling the Special Management Committee's recommendation to

transfer the plaintiff to Northern Regional Jail. On February 18, 2011, the Special Management

Committee recommended that the plaintiff be transferred to Northern Regional Jail because

"[s]ufficient verifiable information exists which indicates that [the plaintiff's] safety may be

threatened[.]" (Special Management Review Form [Docket 2-5], at 2). Nonetheless, Defendant

Ballard exercised his discretionary authority to overrule the recommendation and have the plaintiff

"remain in [his] present status." (*Id.*). After Defendant Ballard overruled the Special Management

Committee's decision to transfer the plaintiff, the plaintiff was assaulted. As discussed above, there

is a genuine issue of material fact regarding whether Defendant Ballard violated the plaintiff's

constitutional rights.

Because I have determined that there is an issue of fact regarding whether Defendant

Ballard violated the plaintiff's constitutional rights, I must now determine whether that right was

clearly established at the time of the violation. "It is well established that the Eighth Amendment

obligates prison officials to take reasonable precautions to 'protect prisoners from violence at the

15

hands of other prisoners.'" *Wilson v. Wright*, 998 F. Supp. 650, 654 (E.D. Va. 1998) (quoting *Farmer*, 511 U.S. at 833). "[T]he exact conduct at issue need not have been held unlawful for the law governing an officer's actions to be clearly established . . . . Rather, the particularity principle mandates that courts refer to concrete applications of abstract concepts to determine whether the right is clearly established." *Amaechi v. West*, 237 F.3d 356, 362 (4th Cir. 2001) (internal citations omitted). "Thus, 'clearly established' in this context includes not only already specifically adjudicated rights, but those manifestly included within more general applications of the core constitutional principle invoked." *Id.* at 362-63 (internal quotation omitted).

"[A] right is clearly established if it has been authoritatively decided by the United States Supreme Court, the appropriate circuit court of appeals, or the highest state court where the challenged official act occurred." *Wilson*, 998 F. Supp. at 656. Clearly established rights may also "be found in statutes or manifestly included within more general applications of the core constitutional principle invoked." *Id.* At the time the alleged events occurred, "it was clear that as a component of their duty to provide inmates with humane conditions of confinement, prison officials were required to 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Farmer*, 511 U.S. at 831). Additionally, at the time of Defendant Ballard's denial of the plaintiff's claim, the Fourth Circuit "had made clear that under some circumstances officials may be liable for completely failing to take any action to avert an attack by one prisoner on another when they knew that a substantial risk of harm existed." *Winfield v. Bass*, 106 F.3d 525, 532 (4th Cir. 1997); *see also, e.g.*, *Odom v. S. Carolina Dep't of Corr.*, 349 F.3d 765, 773-74 (4th Cir. 2003) (stating that in 2003, "the state of pre-existing law was such that reasonable prison guards in the defendants' position would have understood that doing nothing in response to [the plaintiff's]

requests [to be moved to a different cell] in light of the circumstances of this case violated [the plaintiff's rights]"); *Wilson*, 998 F. Supp. at 657 ("Today, a prison official incurs Eighth Amendment liability if he or she in making a cell assignment knows of, and is deliberately indifferent to, a substantial risk of serious harm one inmate generally poses to any assigned cellmate.").

The plaintiff presents evidence that Defendant Ballard was aware of a significant risk to the plaintiff's safety and did nothing to alleviate that risk. Defendant Ballard does not deny the facts asserted by the plaintiff. As discussed above, an officer may be liable when he knows of a risk to an inmate yet does nothing to alleviate that risk. *See Winfield*, 106 F.3d at 532; *Odom*, 349 F.3d at 773. This right was clearly established at the time the plaintiff was assaulted. *See Odom*, 349 F.3d at 773-74. Because I have determined that a reasonable jury could conclude that Defendant Ballard violated the plaintiff's clearly established Eighth Amendment rights, I **FIND** that Defendant Ballard is not entitled to qualified immunity.

## IV.    Conclusion

For the reasons set forth above, the defendants' motion for summary judgment [Docket 75] is **GRANTED** with regard to Defendants Parry, Collins, and Rubenstein and **DENIED** with regard to Defendant Ballard. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:      August 6, 2014

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE

17